F. O. WATTS, *Trustee, v.* S. M. GORDON *et al.*[*]

(*Nashville.*    December Term, 1912.)

1. CORPORATIONS: Unanimous act of quorum of directors in increasing salaries of officers is binding, without formal meeting and without minutes, when.

   Where the charter of a corporation provides that a majority of the board of directors shall constitute a quorum, the unanimous act or agreement of the requisite number of the directors to constitute a quorum in increasing the salaries of the officers will be binding upon the corporation, though there be no formal meeting of the directors, and no minutes of their action, when said directors are practically the sole owners of the stock of the corporation and there is no fraud in their action.   (*Post, pp.* 99, 100.)

2. SAME.   Same.   Recordation in minutes is not essential, unless required by charter or statute.

   Recordation in the minutes of a corporation does not make the corporate act valid, but simply preserves the evidence of it, and is not essential unless required by the charter or a statute.   (*Post, pp.* 100, 101.)

3. SAME.   Quorum of directors and majorty of stockholders may increase the salaries of themselves as officers, if the corporation be solvent and there be no fraud, when.

   Where three directors, constituting a quorum of the board of directors of a corporation, and being the beneficial owners of the stock therein, agreed among themselves, at a casual meeting, and without any formal meeting of the directors, and without notice to the other directors who never attended any meetings of the directors or stockholders, nor took any part in the management of the business, to raise the salaries of two of themselves

---

[*]The authorities on the question what constitutes a unanimous or a majority vote of directors or stockholders of corporation are discussed in a note in 41 L. R. A. (N. S.), 130.

Watts v. Gordon.

as officers, while the corporation was solvent, such reasonable increase of salaries was valid, in the absence of fraud. (*Post,* pp. 101-104.)

Case cited and distinguished: Holmes v. Gilman, 138 N. Y., 369.

4. SAME. Funds appropriated to salaries of officers are not recoverable under doctrine of resulting trusts, where corporation was left solvent.

Where all the real stockholders and a majority and quorum of the directors of a corporation agree to a particular appropriation of the funds of the corporation for salaries to two of themselves as its officers, and such appropriation leaves the corporation solvent, there is no misappropriation of the corporation's funds which can be recovered under the doctrine of resulting trusts; for, in such case, no one can complain. (*Post,* pp. 104,105.)

5. SAME. May pay salaries of employees, at their request, by checks issued to their creditors who are not charged with notice of misappropriation, when.

A corporation's payment of the debts of its officers and employees by issuing, at their request, checks against its funds, directly to the creditors, placing thereon the name of the employee for whose benefit the check is drawn, and charging the amount thereof to the employee's account as a payment on salary, is not illegal; and the receipt of such check by the employee's creditor is not notice to him that the check amounted to an illegal misappropriation of the funds of the corporation. (*Post,* pp. 99, 100, 105.)

Case cited and approved: Railroad v. Trust Co., 198 N. Y., 422.

---

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

A. W. AKERS, for complainant.

C. T. BOYD and PARKS & BELL, for defendants.

127 Tenn.—7.

MR. JUSTICE NEIL delivered the opinion of the Court.

The bill in this case was brought by the trustee in bankruptcy of the Gordon-Martin-Cline Company to recover moneys alleged to have been withdrawn from the treasury of the corporation by the said Gordon, its president, and applied to his own use, and also to pay premiums upon certain policies of life insurance belonging to his wife, Mrs. Sarah Gordon, and his mother, Mrs. Etta Gordon. A recovery was sought against the Northwestern Mutual Life Insurance Company, to which the premiums were paid, and relief was also asked against the policies in question, by way of declaration of a lien thereon, and sale of the policies for the realization of the sum due.

The chancellor adjudged against Mr. Gordon personally a sum of money which he found had been used by the latter of the assets of the corporation. From this part of the decree there is no appeal. He also found that the sum of $1,822.60 of the moneys withdrawn from the funds of the corporation had been applied on the payment of premiums on the policies, and for this he held the Northwestern Mutual Life Insurance Company liable, but declined to fix a lien on the policies.

The complainant prayed an appeal from so much of the decree as refused to declare a lien on the policies, and a personal judgment against Gordon for the $1,822.60; and the insurance company appealed from the latter feature of the decree, and also from so much of the decree as rendered judgment against it for the sums paid on premiums.

The facts, briefly stated, are as follows:

About the year 1903, the defendant Gordon obtained two policies of insurance, and assigned them to his wife, and also took out one of the policies in favor of his mother. During the year 1906 the Gordon-Martin Cline Company, a corporation, was chartered. There were five corporators, two of whom, Mr. Nathan Cohn and Mr. Leo Martin, were merely formal; that is joining others for the purpose of making up the five needed for incorporation, and having only nominal stock. The real owners of the business were S. M. Gordon, J. W. Martin, and Solomon Cline. Up to January 1, 1908, the salary of Gordon and Martin each was placed at $2,500. By consent of the three owners, on January 1, 1908, or about that time, the salary of Gordon and Martin was increased to $3,500 each. But it does not appear that there was ever any formal meeting of the board of directors held, or that any minutes were kept. The three owners simply agreed upon the increase of salary, and Gordon and Martin were allowed to draw accordingly.

The method which these parties used in drawing their salaries was that, whatever bills either owed, a check of the corporation was issued, not to him, but directly to his debtor, the check showing on its face for whose benefit it was issued; that is, in case it was issued for Gordon, it would have his name down in the left-hand corner. The premiums on the insurance policies were paid in this manner, as all other obligations were which Mr. Gordon owed. The chancellor held that the increase of salary was illegal, and therefore all drawn by Mr

Gordon above $2,500 per annum was illegal appro-. priation of the funds of the corporation. As to the insurance company, he held that, inasmuch as these checks showed on their face that they were drawn in favor of the debtors of Mr. Gordon, and for his benefit, they gave notice to the insurance company that the transaction was an illegal appropriation of the funds of the corporation, and for that reason the insurance company was liable.

It appears that at the time these checks were drawn the corporation was solvent. There is no evidence that any fraud was intended, either by Gordon or the insurance company, or by the beneficiaries under the policies. Nor does it appear that the increased salary was exorbitant.

The proposition on which the complainant bases his case, as we understand it, is that inasmuch as there was no meeting of the board of directors for the purpose of increasing the salaries, and no record of such action was preserved on the minutes of the corporation, such increase was necessarily illegal, and hence, when Gordon and Martin drew the increased salaries, they simply misappropriated the funds of the corporation. The three directors constituted a majority of the board, and under the charter a majority of the board constituted a quorum. The unanimous act of this quorum was, therefore, probably binding, whether preserved in the minutes or not. Recordation in the minutes does not make the corporate act valid, but simply preserves evidence of it. It is not essential, unless the charter or a

Watts v. Gordon.

statute requires it. 2 Thomp. Corp., secs. 1842, 1847; 3 Thomp. Corp., 2149; Clark on Corp., p. 479. It is certainly true that, where no minute is preserved of the action claimed to have been taken by the board of directors, and such action is sought to be used against creditors, or third parties, long after it is asserted to have been had, suspicion is at once aroused, and it must clearly appear that the action was really taken. In the present case there is absolutely no doubt that such action was taken.

Again, the three men who agreed to the increase of salaries owned all the stock of the corporation, and it was, therefore, the action of the stockholders as well as of the directors. Of course, generally speaking (Clark on Corp., p. 477), it is true there cannot be lawfully held a called meeting of a board of directors of a corporation without notice to all of the directors, unless such unnotified directors were actually present at the meeting, though, in the absence of evidence to the contrary, it will be presumed that notice was given; and we are satisfied that in the present case no notice was given, because it appears two of the directors, Leo Martin and Nathan Cohn, never attended any meeting or took part at any time in the management of the corporation. Still we consider the fact immaterial, because the action taken was that of a majority of the stockholders, and in fact of all who really held any stock, and hence would be binding, regardless of the absence of legal action on the part of the directors. Nor are we sure that the general rule requiring notice to all of

the directors would be essential to bind the corporation, where the unnotified directors had for years never attended a meeting, or taken part in the management of the business of the corporation, but had in fact turned over the business entirely to the remaining directors; but it is not necessary to decide this question. We may add that it has been held that if, by the charter of a corporation, a certain number of the directors are made a quorum, and given power to transact business, the corporation is bound by the unanimous concurrence of that number at a casual meeting, and without notice to the others, unless notice is expressly required by the charter or by-laws. Clark on Corp., p. 477, and cases cited under note 235. Under such circumstances—that is, where the act challenged was not only that of a majority of the board of directors, but also of a majority of the stockholders; in fact, of all the real holders of stock—to hold the act was illegal would be a mere sticking in the bark, a substitution of form for substance. Of course, if such action was a cover for fraud, the aspect of the case would be wholly changed. Here, however, there was no fraud. The corporation was solvent. At the time it was forced into bankruptcy it had assets of $20,000 in excess of its liabilities. It had not been able to pay certain small debts when demanded, and allowed them to go thirty or forty days in arrears, and these creditors precipitated the bankruptcy proceedings. In the bankruptcy court an inventory was taken, showing $58,000 worth of goods, $15,000 of solvent notes and accounts, some unexpired

insurance, and some cash on hand, all of which exceeded
the debts. The trustee was permitted to run the busi-
ness for about ten months, and suffered great losses,
which depleted the assets to such an extent that they
paid only twenty-nine cents on the dollar.

It is insisted in behalf of the complainant that the
solvency or insolvency of the corporation is an imma-
terial consideration. We do not think so. It does not
seem just that the creditors of a concern really solvent,
forced into bankruptcy simply on account of present
inability to pay debts as they accrued, and greatly de-
pleted by mismanagement of the persons intrusted with
the care of the estate under orders of the court of bank-
ruptcy, should be permitted to have recourse to the
stockholders, who had used a portion of its assets hon-
estly, for legal purposes consented to by all of the stock-
holders and a majority of the directors, even though
there may have been some technical inaccuracy in the
method of appropriation at the time.

We are referred to the case of *Holmes v. Gilman*,
138 N. Y., 369, 34 N. E., 205, 20 L. R. A., 566, 34 Am.
St. Rep., 463, as analogous to the present one. In
that case a member of a partnership had surrepti-
tiously appropriated a large part of the assets of the
firm, and converted them into an estate for his wife
and in her name, meanwhile, by false reports to his
copartners, lulling them into a sense of security and
instilling in them the confident belief that the firm
was not only solvent, but possessed of a large balance

of assets over liabilities. This states a case of atrocious fraud.

In the case before the court, counsel have discussed the question whether the assets of the corporation were a trust fund in the hands of the directors mentioned at the time the payments were made on the insurance policies. In behalf of the defendants it is insisted that as there was no overt act of insolvency, and in fact there was no insolvency, the trust fund doctrine did not attach to the situation. Counsel for the complainant agrees to this view, and says he is not insisting upon the trust-fund doctrine, and it has no application to the present case. His contention is that the officers of the corporation were trustees in fact; that is to say, common law trustees, people charged with the care of the funds of the company, who, therefore, had no right to appropriate these funds to their own use, and that, upon such misappropriation occuring, the complainant could not only sue the misappropriators, but could follow the assets so used into whatever property they might be invested, at least where the person in whose name the investment was made was a mere volunteer. This, says the counsel, is merely an application of the ordinary doctrine of resulting trusts. The theory of resulting trust, however, cannot apply where there was no real misappropriation, and the party whose money was used really agreed to that use. This brings us back to the view, previously announced in this opinion, that where all of the real stockholders and a majority of the directors agree to a particular appropriation

of the funds of the corporation, and that appropriation leaves the corporation still solvent, no one can complain.

The question has been discussed whether a corporation may adopt a general method of paying its employees by check, not directly to such employees but to other persons designated by them as recipients of these checks, thereby canceling with one instrument two debts. Arising out of this question is a further one, whether every one taking such checks must be held *prima facie* in the wrong.  It is in proof in the present case that this method of payment was not only customary with the particular corporation, but with many others, and with business men generally, when requested by employees in the manner stated; the checks, of course, being charged to the account of the employee.  We are unable to see anything legally wrong in such a custom.  The case is not analogous to one in which an executor, for example, on his account as executor, draws checks to pay his own debt, or for any purpose foreign to the estate.  This has been held to be notice, to the bank paying the check, of the devastavit.  So it was held where a man transferred for his own use to one having knowledge of this fact a paper which showed on its face that he held it as trustee.  But how can it be said that a solvent and going corporation commits a fraud by issuing checks at its employee's request to a creditor of that employee rather than to the latter himself?' *Havana Cent. R. Co.* v. *Knickerbocker Trust Co.,* 198 N Y. 422. 92 N. E.. 12.

On the whole case we are of the opinion that the chancellor committed error, and that his decree should be reversed as to the Northwestern Mutual Life Insurance Company. His decree is affirmed as to the refusal to charge the amount in controversy on the insurance policies. Complainant will be taxed with the costs of the appeal.