In re NATIONAL PIANO CO.

(District Court, D. Massachusetts. August 22, 1918.)

No. 23729.

1. CORPORATIONS ⬤⟶426(5)—CONTRACTS—RATIFICATION OF UNAUTHORIZED CONTRACT.

If a contract, not ultra vires, is made in the name of a corporation by an officer assuming to act for it, and is known to and approved by the persons intrusted with the management of its affairs, the corporation is bound without any formal vote.

2. CORPORATIONS ⬤⟶426(10)—CONTRACT—RATIFICATION.

Ratification by a corporation of a contract not previously authorized is more easily inferred where the corporation receives and retains property under it.

In Bankruptcy. In the matter of the National Piano Company, bankrupt. On review of order of referee disallowing claim. Reversed.

Percy A. Atherton and Swift, Friedman & Atherton, all of Boston, Mass., for trustees.

Samuel D. Elmore, of Boston, Mass., for creditor.

MORTON, District Judge. The facts are stated in the referee's certificate. Except as herein otherwise indicated, I agree with his conclusions. It is unnecessary to restate all the somewhat complicated facts, and I shall only refer to such as are significant on the view of the case which seems to me to be the correct one.

By a written contract dated February 3, 1913, and executed in the bankrupt's name by Jewett, its president, the bankrupt agreed with the claimant, Kilmer, to purchase from him 318 shares of its own preferred stock at par. Deliveries were not to begin until July, 1916 (more than three years ahead), and were then to be at the rate of 3 shares per month; payment being due on delivery. The claimant agreed to hold his stock and to make deliveries as specified. This contract was part of a much larger transaction, or series of transactions, whereby Kilmer, who up to that time had held the largest single interest in the bankrupt company and had been its treasurer, was eliminated from its management, and the company's affairs were put into the hands of a group of younger men. Kilmer transferred to the company his entire stock holdings, 710 shares, and received in return the new preferred stock and the contract to repurchase it here in question. He also resigned as treasurer and director.

At this time the company was not merely solvent; it was decidedly prosperous, and its common stock appears to have been worth par. All the stockholders, except possibly those owning a few scattering shares, knew of the contract and made no objection to it. All the directors knew about it, and apparently approved of it; certainly none of them objected at any time. There never was any vote of

the directors authorizing or ratifying the contract; and on' this ground the learned referee has found that it was not binding on the bankrupt company.

[1, 2] With this finding (or ruling) I am unable to agree. The corporation was a close one, in which but few persons were interested, nearly all of whom were actively connected with its management. Such concerns frequently act informally—as this one had constantly done—and are careless about their votes and records. If action, not ultra vires, is taken in the name of the corporation by an officer or agent assuming to act for it, and is known to and approved by the persons intrusted with the management of its affairs, the corporation is bound, without any formal vote. "Authority in the agent of a corporation may be inferred from the conduct of its officers or from their knowledge and neglect to make objection, as well as in the case of individuals." Wells, J., Sherman v. Fitch, 98 Mass. 59, 64 (quoted with approval in York v. Mathis, 103 Me. 67, 79, 68 Atl. 746). See, too, North Anson Lumber Co. v. Smith, 209 Mass. 333, 337, 338, 95 N. E. 938. Such authority or ratification is more easily inferred where, as here, the corporation receives and retains property under the contract in question. Kelley v. Newburyport Horse Railroad Co., 141 Mass. 496, 6 N. E. 745.

[3] The contract itself says explicitly that the corporation is to repurchase the preferred stock. The learned referee finds, however, that it was understood by the parties in interest that the purchase was in fact being made by certain individuals connected with the company, and that it was known to Kilmer not to be "a bona fide purchase by this corporation" of the stock. Just what this finding means, when applied to the facts, is not entirely clear. A lack of bona fides usually implies deception practiced on somebody to his loss. That was not true in this case. The persons assenting to the contract comprised, as has been said, everybody substantially interested in the National Piano Company. There is no finding that, at the time when the contract was made, anybody expected the corporation to become insolvent, or had any intention of thereby defrauding its creditors, nor that the contract had that result. No objection is made by persons who afterwards bought stock in the corporation, and nobody ever disputed the validity of the contract before the trustees in bankruptcy did so. The few stockholders, not explicitly or tacitly assenting, never made any objection to it. Neither the corporation nor its trustees in bankruptcy can now avail themselves of rights which such stockholders might have had. Merchants' Bank v. Citizens' Gaslight Co., 159 Mass. 505, 511, 34 N. E. 1083, 38 Am. St. Rep. 453. Even if the contract results in a large claim which is proved in competition with the merchandise creditors, it is not on that account invalid or unenforceable. Wm. Filene's Sons Co. v. Weed et al., 245 U. S. 597, 38 Sup. Ct. 211, 62 L. Ed. 497.

The learned referee was apparently of the opinion that through the contract Jewett and his associates intended and expected eventually to acquire personally the stock which Kilmer transferred to the company, and to use the company's assets in paying him for such

stock, and that this purpose was known to Kilmer and rendered the transaction invalid. The corporation being solvent at the time, and the effect of the transaction not being to make it insolvent, it is difficult to see who, excepting other stockholders, could object to such an arrangement. Abele v. Meagher Co., 41 Am. Bankr. Rep. 638, 227 Mass. 427, 116 N. E. 805. Jewett and his associates owned most of the other stock. Whether they bought in the Kilmer stock and kept it in the company's treasury, or whether they bought it and afterwards distributed it by a stock dividend or distribution of property in specie, makes, under the circumstances, very little difference.

It does not seem to me that Kilmer understood he was selling to Jewett and his associates, and not to the corporation. Admittedly Kilmer's common stock was transferred directly to the company; the contract to repurchase the preferred was made with him in its name, as part of the consideration for his common stock; other parts of the transaction not necessary to describe were to be, and were, carried out by the corporation itself. Many facts might be referred to, all showing clearly that Kilmer was dealing with the bankrupt corporation, not with Jewett and his associates, as the learned referee intimates. The corporation had power to buy its own stock (Dupee v. Boston Water Power Co., 114 Mass. 37), and I see no sufficient reason why, if all parties in interest chose to make such a transaction, they were not free to do so.

Kilmer's proposition to sell his stock to Jewett after the corporation had got into financial difficulties was obviously predicated upon the supposition—although there is no categorical evidence to that effect—that the company (which Jewett was then attempting to reorganize) would be glad to release Kilmer from his obligations thereunder. Certainly it does not in my opinion warrant disregarding, not only the explicit language of the contract as the parties made it, but also the fundamental character of the transaction in which they were engaged.

It is true that at the time of the contract Kilmer was one of the directors; but it is equally true that he had then agreed to sell out, and immediately afterwards ceased to be an officer of the corporation. Its management was left in the hands of the men who had arranged with him to retire. The contract originated in their suggestions and was made with their full approval. For three years nobody connected with the corporation took any steps to have it disaffirm its action. It allowed Kilmer to hold his preferred stock during that time, supposing that he had a valid contract. Meanwhile, largely through the mismanagement of the company's affairs by Jewett and his associates, the stock became worthless. Kilmer had nothing to do with the mismanagement, and there is no reason why he should shoulder loss occasioned by it. If it was desired to have the company relieved of the contract—and there is no evidence that it was ever so desired—prompt steps to that end should have been taken in justice to Kilmer.

The findings of the learned referee, so far as inconsistent with this opinion, are set aside; his decree is vacated, and one may be entered allowing the claim.