## SWEET v. LANG et al.

(District Court, D. Minnesota. April 2, 1924.)

**1. Corporations ⬥186.**

Payment of stockholders' personal debts by checks of corporation is not wrongful, if payments are charged to proper stockholders who are required to reimburse corporation with reasonable promptness.

**2. Corporations ⬥426(5)—Officers' payment of stockholders' personal debts by corporation's checks may be ratified by knowledge, acquiescence, and consent of corporation without formal action.**

Payment of stockholders' personal debts by officers by checks of corporation may be ratified by knowledge, acquiescence, and consent of corporation without formal action.

**3. Corporations ⬥545(1)—Solvent corporation and its receiver held estopped from claiming right to recover payments by corporate checks of stockholders' personal debts ratified by corporation.**

Corporation, which by acquiescence ratified payment of stockholders' personal debts with corporation's checks when corporation was solvent was estopped from claiming right to recover payments from payees, and receiver of corporation, as representative of corporation, was in same position.

**4. Corporations ⬥560(7).**

Receiver of corporation suing to recover payments of stockholders' personal debts by corporation's checks represents and may enforce rights of creditors and corporation.

**5. Corporations ⬥545(1)—Loan of credit or payment to individual stockholder without right thereto may be repudiated in action for benefit of creditors, if corporation was insolvent or acts were in contemplation of insolvency and contributed substantially thereto.**

Even though authorized by corporation, loan of credit or payment of money to, or for bene-fit of, individual stockholder, without legal claim thereto, may be repudiated and money recovered in action for benefit of creditors, if corporation was then insolvent, or if such acts were in contemplation of insolvency and contributed substantially thereto.

**6. Corporations ⬥560(12)—Burden of proof held on receiver of corporation suing to recover payments of stockholders' debts with corporate funds.**

In action by receiver of corporation to enforce rights of creditors against persons receiving corporate funds in payment of individual stockholders' debts, burden was on receiver to prove facts warranting recovery.

**7. Corporations ⬥563(2).**

Receiver of corporation is entitled to recover from stockholder whose debts were paid by corporate funds, regardless of stockholders' good faith or solvency of corporation.

**8. Corporations ⬥538.**

In action by receiver of corporation for benefit of creditors to recover payments of stockholders' debts out of corporate funds, burden of proving corporation's insolvency when payments were made was on receiver.

**9. Corporations ⬥538.**

Corporation engaged as going concern in extensive operations from day to day is presumed solvent.

**10. Corporations ⬥544(2).**

In absence of proof that corporation was insolvent when stockholders' debts were paid out of corporation's funds, ratified by corporation, trust fund doctrine did not apply.

At Law. Action by John C. Sweet, receiver of the H. Poehler Company, against Carl W. Lang and others. Judgment for defendants.

Affirmed in 14 F.(2d) 762.

Hugh V. Mercer, of Minneapolis, Minn., for plaintiff.

Cobb, Wheelwright, Hoke & Benson, of Minneapolis, Minn., for Carl W. Lang and others.

Boyesen, Otis & Brill, of St. Paul, Minn., for Northwestern Fuel Co.

Geo. M. Bleecker, of Minneapolis, Minn., for Kunz Oil Co.

Hubachek & Schall, of Minneapolis, Minn., for John W. Hayes et al.

D. W. George, of Minneapolis, Minn., for J. P. Eliason.

Bartlett & Bartlett, of Minneapolis, Minn., for Pure Oil Co.

F. W. Booth, of Minneapolis, Minn., for H. M. Libby.

Herbert T. Park, of Minneapolis, Minn., for Wallis Coach & Carriage Works.

G. A. Will, of Minneapolis, Minn., for Pence Auto Co. and McDermott-Wilser Co.

A. A. Tenner, of Minneapolis, Minn., for Henry W. Marsh et al.

A. M. Higgins, of Minneapolis, Minn., for Hennepin Steam Laundry Co.

Marsh & McLennan, of New York City, and Hubachek & Schall, of Minneapolis, Minn., for Edmund Dugan and Frank Dugan, etc.

Simon Meyers, by A. X. Schall, Jr., both of Minneapolis, Minn., for Leopold Metzger et al.

E. A. Prendergast, of Minneapolis, Minn., for Northwestern Bell Tel. Co.

T. J. Stevenson, of Minneapolis, Minn., for Elmer S. Best, M. D., and Carl W. Waldron.

Koon, Whelan & Hempstead, of Minneapolis, Minn., for Minneapolis General Electric Co. and Plymouth Clothing House.

M. H. Boutelle and Le Roy Bowen, both of Minneapolis, Minn., for John W. Thomas & Co. and Young-Quinlan Company.

Kingman, Cross, Morley & Cant, of Minneapolis, Minn., for Drs. De Vries and Davis.

Shaw, Safford, Putnam & Shaw, of Minneapolis, Minn., for Drs. DeVries and Davis.

M. C. O'Donnell, by L. A. Door, both of Minneapolis, Minn., for J. F. Brown et al.

Thomas Hessian, of Le Sueur, Minn., for First Nat. Bank of Le Sueur, Minn.

Irving M. Reiff, of Minneapolis, Minn., for Modern Milk Co.

Sam J. Levy, of Minneapolis, Minn., for Allen Brothers Drug Co. and John S. Smith.

Lancaster, Simpson, Junell & Dorsey, of Minneapolis, Minn., for Union Inv. Co.

Wright & Wright, of Minneapolis, Minn., for Willis P. Northey and Kuehn Heating Co.

C. E. Jennings, of Minneapolis, Minn., for Guy J. Bender.

CANT, District Judge. It is not difficult to understand how some of the conditions which characterize the H. Poehler Company came to be. It was essentially a family corporation as we understand that term. In a rather old-fashioned way the stockholders and some of their relatives regarded it and made use of it as a matter of general convenience. It kept their accounts, and paid their bills, and served them in various ways, and when trouble came to the corporation, they gathered together as much as they could and gave it their generous support. This method of managing such an organization, and especially one so large, was most unbusinesslike and not at all to be commended or encouraged. The most up-to-date methods in respect to such matters are none too good.

The following features are well established in this case:

[1] 1. All parties acted in good faith. This is especially true of creditors of the individual stockholders who are made defendants here. The long-continued course of dealing whereby the accounts of the individual stockholders were paid by checks of the corporation precluded the thought of any irregularity and prevented any offensive questioning of that practice by creditors. In the nature of things there is nothing wrong in having payments made that way. A review of the cases discloses that it is not infrequently done. All that is necessary is that, in managing the internal affairs of the corporation, all such payments shall be charged to the proper parties, and that the latter shall be required to reimburse the corporation with reasonable promptness. With respect to the latter, the persons receiving checks cannot well know or learn the facts.

As to the stockholders, the payment of accounts in this way was as to some of them a lifelong practice. Through fair weather and through foul that was the way they paid their debts. They had no thought of wronging the corporation which bore their own family name, or of dishonoring that name in any way. No single payment was of any considerable amount compared with the magnitude of the corporate business, and no single payment could have appreciably affected the financial condition of the corporation.

[2] 2. So far as it was possible for the corporation to do so, through knowledge, acquiescence, and consent, it had fully authorized the officers of the corporation to pay the accounts of individual stockholders in the way that they did. Formal action of the corporation was unnecessary. Ratcliff v. Clendenin, 232 F. 61, 67, 146 C. C. A. 253; Watts v. Gordon, 127 Tenn. 96, 153 S. W. 483; In re National Piano Co. (D. C.) 252 F. 950, 951; Bacon v. Bankers' Trust Co., 143 Minn. 318, 173 N. W. 719; Gross Iron Co. v. Paulle, 132 Minn. 160, 166, 156 N. W. 268.

If creditors who received the corporate checks had made specific inquiries, they would have discovered that the course of action under which such checks were issued in payment of the private accounts of individual stockholders was fully consented to by all.

The payment of private accounts by checks of the corporation was not ultra vires in the sense that it could not be authorized or ratified by the corporation. Through the books many such cases are to be found, and it is generally held or assumed that such action may be authorized or approved. Atherton v. Beaman (D. C.) 256 F. 871, 874, 875; Little v. Garabrant, 90 Hun, 404, 35 N. Y. S. 689. Affirmed 153 N. Y. 661, 48 N. E. 1105; Watts v. Gordon, 127 Tenn. 96, 153 S. W. 483.

[3] Under the foregoing facts, no action could be maintained by the corporation itself to recover the amounts so paid. Having fully acquiesced in such payments, the corporation would be estopped from claiming a right of recovery. So, too, the receiver, if he proceeded alone as a representative of the corporation, and for the enforcement of its rights, could not recover. His rights, under such conditions, would be the same as those of the corporation. Atherton v. Beaman (D. C.) 256 F. 871, 875; In re National Piano Co. (D. C.) 252 F. 950, 951; Ratcliff v. Clendenin, 232 F. 61, 146 C. C. A. 253; Little v. Garabrant, 90 Hun, 404, 35 N. Y. S. 689, 692; Watts v. Gordon, 127 Tenn. 96, 153 S. W. 483; American Bonding Co. v. Laigle S. & L. Co., 111 Ark. 151, 163 S. W. 167.

[4] The receiver, however, in actions like these, represents and may enforce the rights of creditors as well as those of the corporation.

[5] Under certain [circumstances] an action on behalf of creditors for the recovery of moneys expended by the corporation may succeed, while an action on behalf of the corporation itself for the same purpose may not. Even though authorized by the corporation, the loan of credit or the payment of money to, or for the benefit of, an individual stockholder, when he has no legal claim thereto, may be repudiated and the money recovered in an action for the benefit of the creditors, if at the time of loaning the credit or paying the money, the corporation was insolvent, or if such acts were in contemplation of insolvency and contributed substantially to bring about that result. In this case no payments were made in contemplation of insolvency, or for the purpose of influencing that event.

The theory under which a recovery is allowed in cases brought on behalf of creditors, when the corporation is insolvent, is that, when a corporation becomes insolvent, its assets are then regarded as a trust fund for the benefit of its creditors.

At this stage of the case, then, the following questions may be considered:

(1) Was this action brought by the receiver to enforce the rights of creditors as respects the payments complained of, or was it brought to enforce the rights of the corporation only?

Apparently the case was brought and tried largely on the theory that it was an action to enforce the rights of the corporation, although during the trial it expanded somewhat beyond such limits. By way of amendment to the answer, the defendant had interposed an allegation that the corporation was solvent at the time the payments were made. At the hearing before the auditor appointed under the authority of Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919, a finding was made upon this question. The case apparently was originally brought on one theory, and was tried in part, at least, upon another. Its status in this respect is not clear. Plaintiff now insists that the action is being prosecuted for the benefit of creditors and perhaps that theory should be adopted.

[6] (2) If the action was brought to enforce the rights of creditors, upon whom was the burden with respect to the pleading and proof as to the solvency or insolvency of the corporation?

If brought to enforce the rights of creditors, the burden, regularly, was upon plaintiff to allege and prove such ultimate facts as were necessary to warrant a recovery. If he adopted a short form of pleading, as was done here, the burden of making the necessary proof would remain the same.

[7] If the action were against A. H. Poehler, personally, whose private debts were paid with the funds of the corporation, and if he had not repaid the amounts into the treasury of the company, those facts alone would support a recovery against him. The question of good faith or bad faith, or solvency or insolvency, of the corporation at the time the payments were made, would be of no importance. The action is not against him. It is against those who in good faith, throughout a series of years, received the corporate checks of the Poehler Company in payment of the private debts of the individual stockholders. This, with the stockholders and with that company, was the usual course of business. It had continued for a generation. It was fully authorized

by the corporation. The most scrutinizing inquiry would have revealed, not that payments in this way were unauthorized and a wrongful appropriation as against the company, but that they were fully authorized. How the matter was taken care of or adjusted within the corporation itself, those receiving the checks could not know. Dealers no doubt continued their relations with Mr. Poehler, confidently believing that the payments were not subject to question. If Mr. Poehler had made the checks payable to himself and had deposited the same to his own credit in the bank, and had given to the respective defendants his personal checks for the various amounts, there would be no way now of sustaining a recovery against any defendant. This would be so because, there being nothing to charge the defendants with notice of any wrongful appropriation of the corporate funds, and their equities being quite as strong as those of the corporation creditors, no recovery could stand. It is not easy to understand why these defendants are not in quite as strong a position as if this had been done. There was nothing whatever to suggest to them, or any of them, that the payments were wrongful or that they involved a misappropriation of the corporate funds, any more than the private checks of A. H. Poehler would have so indicated, and there was no wrong, in fact. Through a long course of dealing, in most instances, they had come to rely upon the mode of payment here in question as regular and authorized and the fullest inquiry would have disclosed that this was the fact. Under such circumstances there is much ground for urging that the equities of defendants are as strong as those of the creditors of the corporation and that no recovery can be had.

[8] If for any reason the foregoing is subject to question, and if plaintiff claims a right to recover on the ground that, at the time the payments were made, the corporation was insolvent, there should be no doubt that, under the circumstances referred to, the burden was upon the plaintiff to prove such claim. If the action were against an officer of the corporation with respect to a transaction of doubtful validity, the burden might well be upon him whose relations to the corporation were of a fiduciary nature (Geddes v. Anaconda Mining Co., 254 U. S. 590, 599, 41 S. Ct. 209, 65 L. Ed. 425) to justify the transaction; but with third parties like these defendants who received payment of their accounts in the usu-

al course of business in good faith, the burden should be upon plaintiff to prove facts which will justify a recovery. Merely proving that defendants received the corporate checks, under the circumstances, avails nothing. If the plaintiff relies upon the further fact that, at the time of the payments, the corporation was insolvent, it is incumbent upon him to prove that fact. As already indicated, this may not warrant a recovery. It may well be that, whether the corporation was solvent or was insolvent, no recovery can be had; but in any event, as against good-faith defendants such as these, if plaintiff relies upon the alleged insolvency of the corporation, the burden is upon him to prove it.

Any rule, which in a case like this throws the burden upon the defendants to justify or explain, is based upon the principle that such defendant is charged with notice which raises a presumption against him and which fairly he may be called upon to rebut. Here there is no such notice, and no such rule may be applied.

Ratcliff v. Clendenin, 232 F. 61, 146 C. C. A. 253, is a case much like this, wherein a trustee in bankruptcy was seeking a recovery on behalf of creditors. It was a stronger case for the plaintiff, because the action was against a stockholder to recover moneys paid to him. Therein Judge Sanborn is clearly of the opinion that in such cases the plaintiff should allege and prove that, at the time the payments were made, the corporation was insolvent.

See, also, Atherton v. Beaman (D. C.) 256 F. 871, 874, 875; Little v. Garabrant, 90 Hun, 404, 35 N. Y. S. 689, 692, affirmed 153 N. Y. 661, 48 N. E. 1105.

[9] (3) On the evidence, what should the finding be as to solvency or insolvency?

Where there are large dealings and complicated transactions, proof of solvency or of insolvency is not easily made. The earlier legal steps against the H. Poehler Company, including the appointment of a receiver, were evidently taken on the theory that the corporation was solvent. The statements of resources and of liabilities which are in evidence tend quite persuasively to confirm that view. Up to October 7, 1921, the corporation was a going concern, engaged in rather extensive operations from day to day, and such conditions carried with them the presumption of solvency. Ratcliff v. Clendenin, 232 F. 61, 66, 146 C. C. A. 253. It can hardly be held that a corporation carrying on the volume of business which was

conducted by H. Poehler Company could have been actually insolvent for any considerable period during which those operations were being carried on. Granting that it was insolvent on October 7, 1921, concerning which there is, at least, grave doubt, how long prior to that date may it rightly be held that this condition existed? The auditor, who saw and heard the witnesses and considered the large volume of documentary evidence, reached the conclusion that insolvency had not been shown and that up to the time of the receivership the corporation was solvent. This view should be adopted here.

Creditors of this corporation, speaking through the receiver, are entitled to have their claims and their views most carefully considered. The attempt to do this has been made. Unfortunate conditions occasionally arise, however, for which there is no adequate remedy. It would require too great a straining both of the law and of the facts to grant the relief prayed for here and to take money from one set of innocent people and give it to another. So long as men remain of imperfect character, or carry on business in irregular or slipshod way, so long will innocent people suffer on account thereof.

[10] Insolvency not having been shown as of the time the payments in question were made, the trust fund doctrine applicable to corporations under certain conditions has no application here. McDonald v. Williams, 174 U. S. 397, 400 et seq., 19 S. Ct. 743, 43 L. Ed. 1022; Watts v. Gordon, 127 Tenn. 96, 153 S. W. 483; Ratcliff v. Clendenin, 232 F. 61, 66, 146 C. C. A. 253.

Throughout the consideration of this case, it is necessary to keep in mind the following:

(1) That this is not a suit to recover from an officer of the corporation. He would be liable.

(2) That this is not a case where an effort was being made to defraud or wreck the corporation.

(3) That this is not a case where the defendants from whom a recovery is sought received the payments in question, with knowledge that they were being wrongfully made.

(4) That this is not a case where the payments were wrongfully made as a matter of fact.

(5) That this is not a case where the corporation was insolvent at the time the payments were made.

Authorities, therefore, should be applied with discrimination. Those applicable to any of the situations last above referred to are not in point here.

Judgment should be for the defendants.

Findings will be made in general following the respect of the auditor, but adding thereto the views of the court upon certain other features of the case concerning which request therefor has been made by the plaintiff.