## SWEET v. LANG et al.

## SAME v. NORTHWESTERN MUT. LIFE INS. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. August 14, 1926.)

Nos. 7206, 7207.

1. **Corporations ⊙ 560(7).**

Receiver of corporation represents stockholders and creditors, and may sue for corporation only when corporation can do so.

2. **Corporations ⊙ 545(1)—Neither solvent corporation nor its receiver could repudiate payment with corporate funds of stockholders' individual debts, ratified by corporation.**

Where officers, directors, and stockholders of solvent corporation, by long course of dealing, ratified payments of individual stockholders' debts by corporation's checks, neither corporation nor its receiver could repudiate transactions and require restitution.

3. **Corporations ⊙ 439.**

Solvent corporation may deal with, and dispose of, its assets in any way it wishes with consent of directors and stockholders, and creditors cannot complain if corporation is not thereby rendered insolvent.

4. **Corporations ⊙ 544(2).**

When corporation becomes insolvent, its assets are impressed with trust in favor of creditors, and will be applied first to satisfaction of their claims.

5. **Corporations ⊙ 426(1).**

Gen. St. Minn. 1913, § 6202, and other sections making diversion of corporate property by one in lawful possession a felony, *held* not applicable to payment of individual stockholders' personal debts with corporate funds ratified by corporation, so as to authorize recovery from persons receiving payments.

6. **Corporations ⊙ 560(7).**

Receiver of corporation cannot recover from insurance company premiums on life policy of stockholder paid with corporate funds while corporation was solvent, nor cash surrender value thereof, where corporation ratified payments.

In Error to the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

Appeal from the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

Action by John C. Sweet, receiver of the H. Poehler Company, against Carl W. Lang and others, and suit by John C. Sweet, receiver of the H. Poehler Company, against the Northwestern Mutual Life Insurance Company and others. Judgments for defendants in first action (14 F.[2d] 758), and plaintiff brings error. Decree for defendants in second suit, and plaintiff appeals. Affirmed.

H. V. Mercer, of Minneapolis, Minn. (E. J. Lien, of Minneapolis, Minn., on the brief), for plaintiff in error and appellant.

Claude Krause, of Minneapolis, Minn. (J. O. P. Wheelwright, of Minneapolis, Minn., on the brief), for defendants in error except Pure Oil Co. and Horace M. Libby, and for appellee Northwestern Life Ins. Co.

William W. Bartlett, Marshall Bartlett, and George E. Dyer, all of Minneapolis, Minn., for defendant in error Pure Oil Co.

Frank W. Booth, of Minneapolis, Minn., for defendant in error Horace M. Libby.

M. H. Boutelle and Le Roy Bowen, both of Minneapolis, Minn., for Alvin H. Poehler, Eugenia L. Poehler, and Henry Poehler.

Before LEWIS, Circuit Judge, and FARIS and PHILLIPS, District Judges.

LEWIS, Circuit Judge. These cases were argued and submitted together. The first numbered cause is at law, the second in equity. They rest in large part on the same facts. We will dispose of them seriatim.

On October 7, 1921, the District Court appointed plaintiff in error receiver of H. Poehler Company, a Minnesota corporation. The appointment was made in a judgment creditor's suit. Thereafter the receiver brought a large number of actions against merchants, tradesmen, professional men, and others, charging in each case that Alvin H. Poehler, president of the corporation, had wrongfully and without authority paid off his personal indebtedness to each defendant by giving the corporation's check or checks, that each defendant knew the facts and should be held to have received the moneys of the corporation for its use and benefit, and is thus liable to the receiver as for money had and received. None of the complaints allege that the corporation was insolvent when the payments were made.

The answers allege that for many years prior to the appointment of the receiver it had been the custom and practice of Alvin H. Poehler to pay his personal indebtedness with checks of the corporation, that this was done at all times with the express knowledge and consent of the corporation and of all of its officers, directors, and stockholders, and that all its directors and stockholders ratified, consented to, and acquiesced in the payments. The answers further allege that all payments were made and received in good faith and at times when the corporation was solvent.

There being some forty actions of the kind noted, they were by order of court on motion of the receiver's counsel consolidated; and on motion of several defendants, which was unopposed, the court appointed Charles B. Elliott, an experienced and learned member of the bar, as auditor (Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919), "to make a preliminary investigation as to the facts; to hear the witnesses; report on the issues of fact involved in the pleadings herein, setting out his conclusion as to the facts involved that are not disputed, and make and file a report in the office of the clerk of this court with a view to simplifying the issues for the jury; but not finally to determine any of the issues in the action, the final determination of all issues of fact to be made by the jury on the trial; that such auditor shall have power to compel the attendance of and administer oaths to witnesses; that said auditor is hereby instructed to report upon the issues of fact and separate those items of fact which are in dispute from those as to which there is no real dispute and also to report therewith a transcript of the evidence on which the specific claims are rested; that said auditor is hereby directed to form a judgment and express an opinion upon such of the facts as he finds to be in dispute, but said report of said auditor shall be prima facie evidence only of the facts which he reports, that he is hereby specifically authorized:

"(1) To compel an examination of the books and accounts of the H. Poehler Company and of the personal account of Alvin H. Poehler with said company and the evidence of all parties bearing upon the issues in the pleadings herein."

After hearing much testimony, which the auditor certified with his report, he therefrom found:

"(1) That the H. Poehler Company was duly organized under the laws of the state of Minnesota on or about January 2, 1893, to conduct a grain commission business, that it began said business on January 2, 1893, and thereafter continuously conducted the same as a going concern until the time of the receivership thereof, to wit, on or about October 7, 1921, and that during all of the said time its

principal office and place of business was in the city of Minneapolis, county of Hennepin, and state of Minnesota.

"(2) That, upon the organization of said corporation, its sole stockholders, officers, and directors were Henry Poehler, George Duvigneaud, Charles Poehler, and Alvin H. Poehler, said individuals holding the following offices in said corporation, to wit: President, Henry Poehler; vice president, George A. Duvigneaud; secretary, Charles Poehler; treasurer, Alvin H. Poehler.

"(3) That said George A. Duvigneaud died January 31, 1911, and said Henry Poehler died July 18, 1912, and that thereupon the said Alvin H. Poehler became president and continued in that capacity until the receivership herein. That, from the time of its organization until said receivership, said Alvin H. Poehler was an officer of said corporation in one capacity or another.

"(4) That, throughout the entire period from its organization until said receivership, substantially all of the stock of said corporation was held and owned from time to time, and in slightly varying amounts, by said original stockholders and members of the families of said original stockholders.

"(5) That from the time of its organization until the time of said receivership it was the custom and practice between said H. Poehler Company and all of its directors, officers, stockholders, employees, and some of the members of the Poehler family, who were neither stockholders nor employees, to maintain personal accounts of said individuals with said corporation, and to pay personal bills of said individuals by checks of said corporation, that, as to the principal stockholders and officers, substantially all, if not all, of their personal bills, including bills for their family and household expenses, were continuously paid by such corporation checks, and that this was true throughout said period as to the said Alvin H. Poehler."

"(11) That for much longer periods than the six years immediately preceding the receivership herein the personal bills and accounts of said Alvin H. Poehler with each of the various defendants herein had been paid by corporate checks of said corporation and such payments regularly entered in the books of said corporation according to the practice hereinbefore mentioned.

"(12) That said H. Poehler Company and all of its officers, directors, and stockholders throughout the entire period from its organization until said receivership permitted such accounts to be maintained and such payments of personal bills to be made by corporation checks, without making any objections thereto nor any demand upon any of the recipients of the checks for a return of such payments, or any of them, and took no steps to repudiate or disaffirm such payments, or any of them.

"(13) That the maintenance of said open accounts and the payment of personal bills of such individuals, including Alvin H. Poehler, was known to, authorized, acquiesced in, approved, and ratified by the said H. Poehler Company, and by all of its officers, directors, and stockholders.

"(14) That during the entire period of its organization to and including the time of the appointment of the receiver, said H. Poehler Company was solvent.

"(15) That during the times herein mentioned there has been a custom and practice in the city of Minneapolis among retail merchants and other business concerns, including the defendants herein, to receive and accept corporation checks in payment of the personal bills of the officers, directors, and stockholders of the corporation.

"(16) That the payments for which plaintiff seeks recovery herein, except those made to the First National Bank of Le Sueur and the Union Investment Company, with respect to which special findings are made in foregoing paragraphs 7, 8, and 9, were made to the respective defendants in payment of personal bills of Alvin H. Poehler by the checks of the H. Poehler Company under and pursuant to the customs, practices, and methods of doing business, and regularly entered in the books of the H. Poehler Company, as found and set forth in the preceding findings herein.

"(17) That, in receiving and accepting the checks of the H. Poehler Company in payment of the personal bills of Alvin H. Poehler, for the recovery of which these actions are brought, the respective defendants made no investigation to ascertain the right and authority to make said payments by the check of the H. Poehler Company, but acted in reliance upon the established practices of said company and said Alvin H. Poehler in that respect, and the custom and practice among retail merchants and others, as hereinbefore found, and by reason thereof, and of the facts stipulated in the record herein, I find that the defendants received and accepted said checks, and all thereof, in each instance, in good faith."

The parties then stipulated that trial by jury be waived, and that the consolidated cause be submitted to the court upon the transcript of evidence reported by the auditor. Counsel for plaintiffs filed objections to

the auditor's findings, and moved that his report be not approved, but the court, on consideration of the proof, made findings of fact, the same in substance as found by the auditor, including a finding that the corporation was solvent during the entire period of its organization up to the time of the appointment of the receiver, and on the facts found concluded as matter of law that recovery could not be granted to any of the plaintiffs, and entered judgment in favor of defendants for their costs. With its findings of fact the court submitted a well-considered opinion on the law of the case. 14 F.(2d) 758. The facts seem to demonstrate, and the court found, that all of the transactions complained of were had in good faith, by Alvin H. Poehler, by his creditors, by the corporation, and by consent given by all of its officers, directors, and stockholders, and that none of those transactions caused insolvency. The effect of each payment was an extension of credit to Poehler. He received a substantial salary. The methods adopted may be conceded to have been irregular, but it was the uniform practice from the beginning, not only with Alvin H. Poehler, but with the company's other officers, directors, and stockholders and with members of their families. The corporation kept an account with each of them on its books and paid their current bills. Some of them were at times overdrawn and some had balances in their favor. Interest was regularly charged and credited on these balances. We have been cited to no case that holds or tends to hold that payments thus made can be recovered by the corporation or by its receiver.

[1, 2] The question is not as to the right of recovery from Poehler of any sum he may owe. That is admitted. The receiver stands in a representative capacity—for the corporation, its stockholders and creditors. He may sue and recover for the corporation whenever it could have done so; but, if there be no such right in it, he, of course, cannot assert in its behalf a right which does not exist. Its officers, directors, and stockholders approved, authorized, and ratified by long course of dealing all of the transactions of which the receiver now complains. We know of no rule or principle that would permit it now to repudiate those transactions and require restitution of the payments. In Graham v. La Crosse & M. R. Co., 102 U. S. 148, 26 L. Ed. 106, the court, after observing the well-settled rule that an individual, being solvent and without intent to defraud creditors, may dispose of his property as he pleases, for an inadequate consideration, or even by voluntary conveyance, held that a corporation has the same rights. On page 160 the court said:

"It is contended, however, by the appellant that a corporation debtor does not stand on the same footing as an individual debtor; that, whilst the latter has supreme dominion over his own property, a corporation is a mere trustee, holding its property for the benefit of its stockholders and creditors; and that, if it fail to pursue its rights against third persons, whether arising out of fraud or otherwise, it is a breach of trust, and creditors may come into equity to compel an enforcement of the corporate duty. This, as we understand, is the substance of the position taken. We do not concur in this view. It is at war with the notions which we derive from the English law with regard to the nature of corporate bodies. A corporation is a distinct entity. Its affairs are necessarily managed by officers and agents, it is true; but, in law, it is as distinct a being as an individual is, and is entitled to hold property (if not contrary to its charter) as absolutely as an individual can hold it. Its estate is the same, its interest is the same, its possession is the same."

In Atherton v. Beaman (D. C.) 256 F. 871, suit was brought by trustees in bankruptcy of Parson's Mfg. Company, a corporation, against Beaman, to recover from him certain moneys which had been paid to him on checks of the company in discharge of the personal indebtedness of one of its officers and stockholders. Like payments had been made to Beaman for several years, and there was no evidence that the other officers and directors of the company, who owned nearly all of the stock, did not know at the time that the payments were being made. The court held that their silence and inaction amounted to ratification; that before the plaintiffs could recover it devolved on them to establish that the payments were in fact unauthorized by the company; that Beaman had notice of that fact when he received them; and that they had never been ratified. It was held that the corporation could not have recovered from Beaman, and that the trustees in bankruptcy had no greater rights than it had. This ruling was affirmed on appeal. Atherton v. Beaman (C. C. A.) 264 F. 878. See, also, Watts v. Gordon, 127 Tenn. 96, 153 S. W. 483; Little v. Garabrant, 90 Hun, 404, 35 N. Y. S. 689; In re National Piano Co. (D. C.) 252 F. 950; American Bonding Co. v. Laigle Co., 111 Ark. 151, 163 S. W. 167; Morawetz on Private Corporations, 2d. Ed. Vol. II, sec. 625.

[3, 4] If creditors have no rights to the payments sued for, then the receiver could not

maintain these actions in their behalf. A solvent corporation may deal with its assets and dispose of them in any way it wishes with the consent of its directors and stockholders, and creditors have no right to complain if the corporation is not thereby rendered insolvent. They have no right of control over corporate management and no interest in or to the assets of a solvent corporation. When it becomes insolvent, the officers and directors are then regarded by a court of equity as holding corporate assets in trust for the stockholders and creditors; but equitable rights in or to the property of a corporation do not attach in favor of creditors until the corporation becomes insolvent and a court of equity has taken possession. Upon the happening of that event its assets are impressed with a trust in favor of creditors, and the court will then apply them, first, to the satisfaction of their claims. We stated the principle with unmistakable clearness in Ratcliff v. Clendenin, 232 F. 61, 66, 146 C. C. A. 258. There the trustee in bankruptcy of a corporation sued Ratcliff for certain payments that had been made to him by the corporation. We said:

"As the plaintiff failed to prove that the elevator company was insolvent when the $4,500 was paid to Ratcliff, it failed to establish the fact that that sum or any part of it was ever charged with any enforceable trust or equitable lien in favor of any creditor of the corporation or in favor of the trustee in bankruptcy. A solvent corporation, like a solvent individual, holds its property free from any enforceable trust or equitable lien in favor of its creditors. It is only when it becomes insolvent that such a trust or lien in favor, first, of its creditors, and, second, of its stockholders, attaches to its property."

Cases supporting the proposition are there cited. The corporation being solvent at the times the payments were made and thereafter, its creditors had no rights in or to the payments, and hence no right to demand through the receiver their restoration to the company.

[5] Counsel for the receiver does not challenge the soundness of the two propositions that have been considered. He says in his brief:

"Our contention is that the rights of this plaintiff, both for the corporation and the creditors, are much broader, and are absolute in law * * * that the contractual statutes here are absolute as to the corporation and especially as to the creditors * * * that the rights of the corporation and the creditors here are much broader than they were under the old equity trust fund theory."

He rests his contention on section 6202, Gen. Stat. Minn. 1913, which reads:

"The diversion of corporate property to other objects than those specified in the recorded and published certificate, where injury to any individual results therefrom, the declaring of dividends when the profits are insufficient to pay the same or when the funds remaining will not meet the corporate liabilities, or any intentional deception of the public or individuals in relation to its means or liabilities, are felonies," etc.

He quotes in his brief other cognate sections which declare the appropriation of corporate property by one in lawful possession of same to his own use with intent to deprive or defraud the owner thereof, to be criminal offenses. These statutes, he argues, establish a public policy of the state, in the preservation and disposition of corporate property, and that Poehler and his creditors co-operated in its violation, and both should be held liable. His brief abounds with excerpts from opinions of the Supreme Court of Minnesota and other courts, announcing well-settled and accepted principles, that corporate officers may not divert corporate assets to their own use; that they bear a fiduciary relation to the corporation; that they cannot use corporate property and corporate credit to their own advantage; and that those who deal with them, knowing that they have acted in violation of their trust obligations to the corporation, will be held to account for what they may have received of corporate assets in such unlawful transactions. The statute relied on is not an unusual one. We think it may be safely said that statutes substantially like it may be found in every state of the Union. They define certain acts as criminal offenses, which acts were theretofore considered to be a sound basis of civil liability, and they are still so considered. No agent or fiduciary can appropriate to himself of his own volition property of his principal or beneficiary. This is what the Minnesota statute condemns and makes criminal; and of course there is civil liability of those who participate. But suppose the solvent corporation authorizes it or acquiesces and ratifies it and by agreement charges the agent with the value? On what principle, then, can the party with whom the agent dealt be liable? There is none, as we have already pointed out. Even the agent is not liable on the original transaction. His liability is then on contract to make his credit good. The statute has no application here, because as between agent and principal the latter's property cannot be said to have been misappropriated. Appellant cites us to no

Minnesota case which construes the statute in the way he would have it applied. He misconceives its effect and purpose. It discloses no intent to nullify settled principles of law and equity on the subject of civil liability. It is essentially a criminal statute. In Watts v. Gordon et al., 127 Tenn. 96, 153 S. W. 483, the trustee in bankruptcy of the corporation sued Gordon and an insurance company for $1,822, made up of premiums on life insurance policies issued to Gordon and his wife, and paid out of the funds of the corporation. The directors and practically all of the stockholders of the corporation had consented to the payments. The Supreme Court of Tennessee said:

"The theory of resulting trust, however, cannot apply where there was no real misappropriation, and the party whose money was used really agreed to that use. This brings us back to the view, previously announced in this opinion, that, where all of the real stockholders and a majority of the directors agree to a particular appropriation of the funds of the corporation, and that appropriation leaves the corporation still solvent, no one can complain."

Gordon was a director and officer of the corporation, and drew a salary for his services. That court further said:

"The question has been discussed whether a corporation may adopt a general method of paying its employees by check, not directly to such employees, but to other persons designated by them as recipients of these checks, thereby canceling with one instrument two debts. Arising out of this question is a further one, whether everyone taking such checks must be held prima facie in the wrong. It is in proof in the present case that this method of paying was not only customary with the particular corporation, but with many others, and with business men generally, when requested by employees, in the manner stated; the checks, of course, being charged to the account of the employee. We are unable to see anything legally wrong in such a custom."

For the reasons stated, discussed and well sustained in the opinion of the learned District Judge, he dismissed the law action at the cost of plaintiff.

Those judgments are affirmed.

[6] Cause No. 7207 was brought as an action at law against the Northwestern Mutual Life Insurance Company to recover premiums which had been paid to it by Alvin H. Poehler on policies which it had issued to him and one to his son Henry, in the same way and under the same circumstances as the payments which we have considered in the law cases. It was alleged that in some of these policies the beneficiary named was the wife of Alvin H. Poehler and in others his estate. They have a cash surrender value. The relief sought was judgment for the full amount received by the insurance company, or, in the alternative the surrender value of the policies, and for that purpose that they be delivered up.

The insurance company moved the court for an order to bring in Alvin H. Poehler, his wife and his son as necessary parties, and after that had been done the cause was transferred to the equity docket. Answers were filed, and the case submitted by stipulation on the evidence taken by the auditor, with some additional proof. The court found that the premiums had been paid in the same way and under the same condition and circumstances that payments sued for in the law cases had been made. For the reasons stated in the law actions, the court ordered the bill dismissed. In doing so, it noted the fact that no relief had been asked for against Alvin H. Poehler personally on account of his indebtedness to the H. Poehler Company, and said:

"If the plaintiff deems himself entitled to such relief, leave is reserved to him to make application therefor to the court; otherwise it will be ordered and decreed that the bill as against defendant Alvin H. Poehler be dismissed without prejudice."

Plaintiff appears to have ignored this suggestion of the court, and the order was then entered dismissing the bill, but without prejudice as to Alvin H. Poehler. The policy issued to Henry Poehler had been converted into a paid-up policy for $1,310. By stipulation it appears that those issued on the life of Alvin H. Poehler had a cash surrender value of $17,150, and that $5,700 had been loaned upon them by the insurance company. We do not find in the record the facts as to the beneficiaries in the different policies. They are not stated in the briefs, and no contention appears to be based upon that point. In all the cases the receiver's counsel has placed his insistence on a claim of personal liability of those who received the company's checks in payment. We see no reason why the facts do not require the same conclusion in this case as the one we reached in the law actions. The case of Little v. Garabrant, supra, was much like this. The syllabus of that opinion reads:

"All the stockholders of a corporation having assented to the use of corporate funds for the payment of premiums on a policy on the life of one of its stockholders, payable to his wife, another stockholder, and the payments having been made while the corpora-

tion was solvent, its receiver cannot, because of such diversion of funds, maintain an action to have the policy declared his property."

In the body of the opinion, it was said of the receiver's rights:

"In his capacity as trustee for the corporation he would not be precluded from a successful prosecution of the action because of the assent of all of the stockholders to the use of its funds for purposes outside of the business of the corporation, provided it were the fact that the corporation was insolvent at the time such payments were made."

The New York Court of Appeals (Little v. Garabrant, 153 N. Y. 661, 48 N. E. 1105) unanimously affirmed the judgment in this case on the opinion below. The facts in Watts v. Gordon, supra, which we have considered, are the same in legal import as those we have here. We think our opinion in Vorlander v. Keyes (C. C. A.) 1 F.(2d) 67, relied on by appellant, has no application here. Vorlander, an officer of the bank and in charge of it, took its funds without the permission or consent of any one by himself and used them in the purchase of insurance policies on his own life. He in effect embezzled the bank's funds and used them as a trustee ex maleficio.

The decree in this case is also affirmed.