CARSON NAVAL STORES CO. v.
UNITED STATES.

No. 2457.

District Court, S. D. Georgia,
Savannah Division.

Aug. 24, 1939.

Gordon C. Carson and Hitch, Denmark & Lovett, all of Savannah, Ga., for plaintiff.

J. Saxton Daniel, U. S. Atty., of Savannah, Ga.

BARRETT, District Judge.

A fair statement of this case is contained in the brief for the plaintiff.[1]

Other than such information as may have been given by the statute itself as to the duty of the plaintiff to collect the 2¢ each upon the checks, drafts, etc., no

---

[1] This is an action at law by a taxpayer against the United States Government for a tax paid by it under protest. The amount in controversy is less than Ten Thousand ($10,000) Dollars and the Court has jurisdiction by virtue of Section 24 of the Judicial Code, 28 U.S.C.A. § 41.

The plaintiff, Carson Naval Stores Company, is a Georgia corporation with its principal place of business in Savannah. For many years it has been engaged in business as a naval stores factor. As such it primarily handles for distribution and sale certain turpentine and rosin produced in the outlying rural counties. Its customers run turpentine stills and box pine trees for gum. The spirits of turpentine and crude gum are sent in to the Company on consignment, and it sells or stores the goods on instructions from its consignors.

The turpentine and rosin season is in the spring of the year. During the fall and winter the customers of Carson Naval Stores Company visit its Savannah office and arrange with it for individual lines of credit during the ensuing year. The various officials of the Company discuss with them very thoroughly their probable wants for the next year, help and assistance is given to them in arranging a workable budget, and approximations are made of the likely items of expense that the customer will have to meet during the naval stores season. After there has been an agreement upon the amount of the line of credit to be extended, the customer executes his promissory note for the maximum amount specified in the line of credit. Contemporaneously, security deeds or chattel mortgages are executed for the protection of the factor in making the advances. During the producing season shipments of turpentine and rosin are sent in to the factor, and the net proceeds are applied on the producer's debt to the factor.

After the financial arrangements have been made during the fall and winter as above stated, there is a bookkeeping credit made to the customer's account for the amount of the notes executed by him. However, the privilege is reserved by the factor to honor only such drafts as it thinks are being drawn in accordance with the agreed budget. If the customer, in the opinion of the factor, is drawing too heavily against the line of credit, payment of the drafts may be refused. Not infrequently, for various credit reasons, they are refused. Interest is not charged by the factor on the total amount of the line of credit as shown by the face amount of the promissory notes, but solely on the balance as shown by the customer's statement of actual debits and credits. The same interest that is charged to customers who have debit balances on the books of the factor is likewise credited to customers who have created credit balances by shipments of naval stores products over and above their actual withdrawals.

During the year 1933 Carson Naval Stores Company had in the neighborhood of four to five hundred customers. Of this number around 150 to 175 had credit balances and the others had debit balances. From August 1, 1933 to December 31, 1934 there were 31,557 drafts drawn on Carson Naval Stores Company by its customers. Out of these drafts 7,069 were drawn against customers having credit balances and the remainder were drawn by customers who had no balances to their credit.

On April 8, 1937, a letter was addressed to Carson Naval Stores Company by Paul Cobb, Chief of the Field Division of the Internal Revenue Unit of the Treasury Department. This letter, in essence, informed the factor that it had made itself liable for a 100% penalty for failure to collect the 2 cents Bank Check Tax on these various drafts under Section 751 of the Revenue Act of 1932. The letter called upon Carson Naval Stores Company to make demand upon the persons from whom it was alleged the tax should have been collected from March 1, 1933 through December 31, 1934. The Government has since

information was given to the plaintiff until April 8, 1937, two years, three months and eight days after the tax had been repealed. There was no liability on the plaintiff for the assessment of $631.14 unless the non action of the plaintiff in not collecting such tax was willful.

The issues for determination in this case are but few.

The act claimed to have been violated is section 751 of the Revenue Act of 1932, 47 Stat. 276, as follows:

"(a) There is hereby imposed a tax of 2 cents upon each of the following instruments, presented for payment on or after the 15th day after the date of the enactment of this Act and before July 1, 1934: Checks, drafts, or orders for the payment of money, drawn upon any bank, banker or trust company; such tax to be paid by the maker or drawer.

"(b) Every person paying any of the instruments mentioned in subsection (a) as drawee of such instrument shall collect the amount of the tax imposed under such subsection by charging such amount against any deposits to the credit of the maker or drawer of such instrument, and shall on or before the last day of each month make a return, under oath, for the preceding month, and pay such taxes to the collector of the district in which his principal place of business is located, or if he has no principal place of business in the United States, to the collector at Baltimore, Maryland. Such returns shall contain such information and be made in such a manner as the Commissioner, with the approval of the Secretary, may by regulations prescribe. Every person required to collect any tax under this section is hereby indemnified against the claims and demands of any person for the amount of any payments made in accordance with the provisions of this section."

It will be observed that the duty of collecting such tax was imposed only upon "any bank, banker, or trust company". If therefore the plaintiff was not a bank, banker or trust company there was no duty upon it in the premises.

It is true that part of Treasury Regulations 42, promulgated under the revenue act of 1932 are as follows:

"Art. 35. Use of terms. Checks, drafts, and orders for the payment of money include any order in writing, drawn upon a bank, banker, or trust company, requiring the person upon whom drawn to pay a sum certain in money, to order or to bearer, whether on demand, at sight, or at a fixed or determinable future time.

"The term 'bank, banker, or trust company' includes any person or institution carrying on the business of, or maintaining an establishment for, the custody, loan, exchange, or issue of money, the transmission of funds by checks, or the acceptance or payment of drafts or orders for the payment of money. The fact that the banking facilities afforded are incidental to any other business carried on will not avoid liability to the tax."

"Art. 37. Liability. Under the terms of the Act the tax is payable by the maker or drawer of the instrument. Every person who pays the instrument as drawee shall collect the amount of the tax by charging the amount of the tax against any deposit to the credit of the maker or drawer of the instrument."

■ Are such regulations valid in enlarging the scope of the statute itself? It is

---

admitted that the statute of limitations would bar any collections on drafts paid or honored back of August 1, 1933.

A reply was made on April 21, 1937 by Carson Naval Stores Company to Mr. Cobb stating that there was no duty imposed upon it by law to collect these taxes since it did not come within the purview of the taxing statute.

Under date of September 25, 1937 the Collector of Internal Revenue at Atlanta, Georgia, gave a notice to Carson Naval Stores Company of an alleged liability for taxes under Section 1114 (d) of the Revenue Act of 1926, 26 U.S.C.A. § 856 (c), and imposed a 100% penalty against the plaintiff which amounted to $631.14. This was based upon a calculation of 2¢ upon 31,557 drafts honored by the factor from August 1, 1933 through December 31, 1934. The plaintiff remitted, under protest, to the Collector its check for this amount on September 28, 1937. On March 4, 1938 a regular claim for refund was made on Form 843 for the amount of the assessment and under date of May 19, 1938, Guy T. Helvering, Commissioner of Internal Revenue for the Treasury Department, notified Carson Naval Stores Company that its claim had been rejected in full.

Action was then brought in this court by Carson Naval Stores Company for the $631.14, together with legal interest thereon and costs.

recognized that it is convenient, and often necessary, that some of the details in administering a statute must be created by regulations of the department administering the same, but I know of no law that will make a statute applicable to persons where the Congress has not done so. In this particular case let it be observed that under the act of 1932 quoted above we find this provision: "Such returns shall contain such information and be made in such a manner as the Commissioner, with the approval of the Secretary, may by regulations prescribe". Is it not fair to consider that Congress limited in this case the right to establish regulations to what it specified? If by definition or declaration the Commissioner could make the Act applicable to others than Congress declared, why could he not make it applicable to every one?

Not only do these regulations declare that "the term bank, banker or trust Company, includes any person or institution carrying on the business, or maintaining an establishment for, the custody, loan, exchange, or issue of money, the transmissions of funds by checks, or the acceptance or payment of drafts or orders for the payment of money", but "The fact that the banking facilities afforded are incidental to any other business carried will not avoid liability to the tax".

The urge by the government in this case is that if any one or more of the practices in which bankers engage, and it forms a part of their business, shall be used by any person, however incidental to its main business, it would bring them under this statute.

If this can be done why have Congress? If this regulation is the law there are an infinite number of those engaged in the factorage business and in many other kinds of business who would come within its scope. In my own acquaintance covering many years, in the cotton factorage business in Augusta, where no one ever thought of his being a banker, the factor would inevitably come under this act.

■ It is my conclusion, without deeming it necessary to discuss the respective authorities, that the plaintiff is not and was not a bank, banker or trust company; and that the effect of the Commissioner, by declaration going far beyond the apparent purpose of the statute, is a nullity so far as making this company a bank, banker or trust company.

As to reliance by the government upon the regulations we find this statement in its brief: "The brief (pp. 14-17) of the plaintiff takes the position that the Government's case rests solely on the regulations. That is not the Government's contention; the Government relies upon the statute and the regulations. Surely the Carson Naval Stores cannot contend that they are not within the regulations".

For a clear and cogent discussion of a corporation's not being a bank, even when it does certain things that a bank can and does do, see Wells, Fargo Co. v. Northern Pac. R. Co., C.C., 23 F. 469, 471.

■ If the above opinion of the court is well founded there is of course no need for further discussion, but in view of the fact that it may not be considered to be well founded by an Appellate Court, this court further finds; that there is no evidence to sustain the view that the failure to collect such taxes was willful. The meaning of the word willful is not always the same. Some times it merely means with knowledge, as distinguished from accidental. Some times it means with a malicious or other evil purpose, as in crimes involving moral turpitude. Some times it involves a mere failure to observe a known statute, excuse for doing which is not justified or excused by its being caused by the neglect of an employee, contrary to his instructions.

It is urged by the government that all that is necessary in this case is that the plaintiff should have refused to carry out the law, that is, to collect in 1937—after the law itself had been repealed—the taxes which should have been collected in 1933 and 1934. The government apparently allows no independent conviction on the part of the plaintiff that it did not come within the scope of the act and that therefore there was no duty upon it to collect the tax. It seems to take the position that because some agent of the government had given an interpretation of the law, several years after its repeal, the refusal of the plaintiff to obey such direction was willful. While it is urged by the government that the term "willful" can not have the meaning in this statute that it would have in a criminal prosecution because the proceedings here were only civil, may not this be true,—that the penalty under the civil proceedings might be tremendously more severe than if a criminal proceeding was employed? Is it to be conceived that

the government intended to penalize to an unlimited extent a person who honestly thought he owed no duty to the government and therefore omitted to perform the same, even when thereafter a different view of what the law meant was expressed by a subordinate official of the government; for it must be remembered that the punishment for the "willful" violation is 100% of the tax itself?

Further, is not this true? Section 774 of the Act of 1932, 26 U.S.C.A. following section 1481, contains this provision: "All provisions of law (including penalties) applicable in respect of the taxes imposed by section 500 of the Revenue Act of 1926, shall, insofar as applicable and not inconsistent with the Act, be applicable in respect of the taxes imposed by Parts I, IV, V, and VI of this title." Under subsection (d) of said section 500 of the act of 1926, 26 U.S.C.A. §§ 942, 943, there is a punishment as for a misdemeanor provided for failure on the part of the management of a theatre and the like. Does it not follow therefore that there could be a prosecution under the Act of 1932 for failure to collect this tax, and does not this therefore necessitate the construction of "willful" as it would be employed in a criminal statute? For surely it can not be that the character of punishment to be pursued, at the election of the administrative officer, can change the meaning of a statute of Congress.

Even though all of the above views be erroneous, it appearing that to the extent of $489.76 there were no deposits with the plaintiff at the time of such drafts there should be a judgment in its favor for such amount with interest.

During the period for which the tax is sought to be collected in this suit the plaintiff was not a bank, banker or trust company so as to make it liable for such tax.

Under the evidence in this cause, even if there was a failure on the part of the plaintiff to collect the tax, such failure was not 'Willful' so as to subject the plaintiff to the penalty.

In no event is the plaintiff liable for $489.76 of the amount of the tax claimed for the reason that this amount was not on deposit with the plaintiff at the time of the alleged drafts.

The Commissioner was without authority of law to determine what the Congress meant by the use of the words "bank, banker, or trust company" in section 751 of the Revenue Act of 1932, and to thus increase by definition those included in the above words, as he undertook to do in Art. 35 of Treasury Regulations No. 42, and such attempted action was void.

It follows that the plaintiff was not liable for the penalty collected and the plaintiff is entitled to judgment in the sum of $631.14 with interest.

Let a judgment be presented accordingly.