CASCADE COUNTY, MONTANA, v. PEN-
WELL, Collector of Internal Revenue.

No. 574.

District Court, D. Montana,
Great Falls Division.

May 31, 1946.

H. C. Hall, of Great Falls, for plaintiff.

John B. Tansil, U. S. Dist. Atty., of Billings, Mont., and Harlow Pease and Emmett C. Angland, Asst. U. S. Dist. Attys., both of Butte, Mont., for defendant.

PRAY, District Judge.

In the above-entitled cause, Cascade County, Montana, is suing the Collector of Internal Revenue for Montana to recover the sum of $2,016.56, which comprises penalties and interest assessed against the plaintiff on account of its failure to collect and pay the sum of $1,878.40 claimed by the defendant as a tax on admission tickets to the North Montana State Fair held by the plaintiff in August, 1942, and hereinafter referred to as the fair.

Authority for the establishment and conduct of said fair is found in sections 4545 to 4550, inclusive, Revised Codes of Montana 1921, and now in the same sections of Revised Codes of Montana 1935, wherein the plaintiff through its Board of County Commissioners were authorized to appoint a County Fair Commission with authority to hold a county agricultural fair in Cascade County. It appears that the Fair Commission, pursuant to the statutes cited, has continued in existence conducting county fairs from about 1934 to 1942.

There seems to be no serious dispute as to the main facts. The principal question arises over the application of the Internal Revenue statutes and regulations to the tax on admission tickets, which was applied to agricultural fairs for the first time in 1942. Each year prior to the opening of the fair general admission tickets were sold in the form of strip tickets, so called, consisting of five tickets in a strip, to a purchaser at the price of one dollar; a tax of ten cents was added in 1942. Advance

sales of strip tickets were made several weeks before the beginning of the fair and continued until 9 o'clock p.m. of the evening before the fair opened. A general admission ticket was sold for fifty cents up to 4 o'clock p.m., and for twenty-five cents after 4 o'clock p.m. The fair was widely advertised long in advance of the opening day, and likewise the sale of strip tickets and the advantage of procuring them. The sale of strip tickets exceeded the sale of the general admission tickets in the ratio of four or five to one. The evidence shows that in 1942 about 90,000 strip tickets were printed, which would have been more than required to cover all general admissions to the fair for that year. The strip ticket had been in use at the established price for many years. The ten per cent federal tax was added to the regular price of all tickets sold. It appears that the question relating to the admission tax was taken up by the fair management with the Internal Revenue Department, and at first the former was advised that the tax on strip tickets would be ten cents, but later on the department held that the proper tax should be twenty-five cents. However, acting upon the advice of the County Attorney of Cascade County, the fair auditor and accountant, Douglas Wilson, and accountants Ferris & Company, a tax of ten cents was collected on the strip tickets and remitted to the Collector of Internal Revenue.

In October, 1942, the Collector, claiming a willful failure to collect the proper tax, assessed plaintiff with a penalty of $1,878.40 for failing to collect a tax of twenty-five cents on strip tickets, with a further penalty added of $93.92 and an interest charge of $30.65; additional interest of $13.59 was thereafter added to above sums. In December, 1943, plaintiff presented to the Commissioner of Internal Revenue its claim for a refund of $2,016.56, which claim was rejected in July, 1943.

The questions presented here appear to be substantially as follows: (1) Was the proper tax upon the strip ticket ten per cent of the cost of the strip, or was each ticket in the strip to be assessed a tax of ten per cent on the sum paid for a general admission ticket after the fair opened? (2) Was Cascade County subject to the penalty assessed within the meaning of the law? (3) Was there a willful failure on the part of Cascade County to collect the tax alleged by defendant to be the proper tax?

Under Section 1700, Title 26 U.S. C.A. Int.Rev.Code, the statute provides that: "There shall be levied, assessed, collected, and paid—(a) Single or season ticket; subscription—(1) Rate. A tax of 1 cent for each 10 cents or fraction thereof of the amount paid for admission to any place, including admission by season ticket or subscription * * *. In the case of persons * * * admitted free or at reduced rates to any place at any time when and under circumstances under which an admission charge is made to other persons, an equivalent tax shall be collected based on the price so charged to such other persons for the same or similar accommodations, to be paid by the person so admitted * * *." Thus it appears that the tax is 1 cent for each 10 cents or fraction thereof of the amount paid for admission to any place, including admission by season ticket or subscription. The regular established price for the strip ticket was one dollar plus tax of ten cents. No admission could be gained at the fair unless the visitor holding the strip ticket presented it at the gate. The law says there shall be collected a tax of one cent for each ten cents of the amount paid for admission; the amount paid for the ticket which admitted him to the fair was one dollar, to which was added a ten cent tax. If he went to the fair but once, or if he did not go at all, the tax remained the same. The tax is on the amount paid.

The remainder of Section 1700(a)(1), in so far as it pertains to this controversy, relates to the tax where persons are "admitted free or at reduced rates." The language here is not aptly chosen or the meaning plainly expressed, and should be considered in connection with the facts and pertinent regulations, and likewise with the introductory wording of the section. The tax is on the amount paid and includes admission by season ticket or subscription. The strip ticket is the first ticket sold, is the standard ticket and sold at an estab-

lished price which has been the same for a long period of time. Where the tickets are different in kind and price and on inspection are found to afford accommodations that are not the same or similar, there is no guide or definition to enable one to determine the exact status of either. This feature seems not to have been considered in framing this part of the section, which gives the impression of having been much discussed and amended until it finally emerged in its present inartistic form.

The Court has considered the arguments of counsel, in which for the defendant, among other things, it is asserted that no weight can be given the claim of an "established price"; which according to defendant was merely a "reduced price", adopted as a "savings proposition"; the Court believes there is another view and a more reasonable interpretation. According to the evidence the price of the strip ticket is the regular established price of admission. A person who does not wish to buy a strip ticket and who attends the fair but once, as most people would be likely to do who go to the gate and purchase a ticket of admission, would effect no saving in buying a strip ticket, and in so doing there would be no reduction in price to him; he could purchase a ticket of admission for fifty cents or twenty-five cents, depending upon the time he appeared at the gate. The strip ticket is sold as one single ticket at the established price, and is good for admission at any time, day or night, and may be used to admit the holder and his automobile; either two such admissions or a greater number if less are used for his automobile. The ticket purchased at the gate would be good for one admission either in the day time or at night, depending upon the time and kind of ticket purchased, and the price would be different and less than the price of the strip ticket. The tickets, their prices and their uses are not at all alike. If a person desired to attend the fair more than twice, it might have been to his advantage to purchase a strip ticket before the sale was withdrawn, except if he used his automobile, which the ticket provided for, he could attend in such manner only twice, and would have one ticket in the strip remaining. The ticket purchased at the gate would be at a higher price than one ticket in the strip would amount to, but, the strip ticket was also used for another purpose—the admission of an automobile. Referring to the provisions of Section 1700, could it fairly be said that the strip ticket provided the same or similar accommodations as the ticket purchased at the gate; the former included the admission of the holder and his automobile at any time, while the use of the latter was restricted by the kind of ticket purchased and the time of purchase? If a visitor wishes to gain admission to the fair by strip ticket, he must pay the price of that ticket, and the tax is imposed upon the price he must pay; the tax applies to the payment for admission and not to the admission itself, "and as soon as payment for admission is made the tax attaches, whether or not the admission ever takes place. Where a single charge is made to cover admission to more than one attraction, the tax is computed on the basis of such charge". These regulations would seem to apply under sections cited as 101.2 and 101.4. The regulation (Sec. 101.10) which counsel claim should not be considered, provides in part as follows: "The regular or established price of admission to an attraction on a given occasion means the full price, fixed by the person in control, in force at the time of the first sale, of tickets or cards of admission thereto." It would seem that the regulation, Sec. 101.10, is of considerable interpretative value here in connection with other regulations and statutes in determining how the tax should be applied and likewise the amount of the tax. Much more is contained in this regulation than was quoted; the remainder would also seem to have special application to the facts in this case; for instance, it provides that the established price may be based upon any scale of prices adopted in good faith, and reasonably corresponding to the kind of accommodations furnished, and will be accepted as the true established price of admission, and that it need not be the same for different attractions or even for different performances of the same attraction; it further provides that "When tickets are once put on sale for a particular performance the price of admission for

every accommodation at that performance is thereby established"; also that the established price for an occasion may not thereafter be increased for that occasion, and if it is, the excess charge is taxable; and that established prices are not affected by the mere sale of a few admissions at prices different from the ones established. Again referring to Sec. 101.4, at the beginning, as follows: "The amount paid for admission to any place, including any amount paid for a season ticket, or as a subscription, is subject under 1700(a) of the Code, as amended, to a tax of 1 cent for each 10 cents or fraction thereof." Here again it appears that the amount paid is subject to the tax. These regulations help clarify the meaning of the statutory provisions first quoted, and would indicate that the tax already collected and paid was all that could be exacted.

In any event, whether or not the conclusion of the Court as to the rate of tax is correct, to allow the assessment of a penalty against Cascade County, a governmental subdivision of the state, would seem to be contrary to the general rule. The case cited by counsel, that of Sullivan v. Big Horn County, 66 Mont. 45, 48, 212 P. 1105, unquestionably announces the correct rule of law. That such penalty could not lawfully be assessed is further apparent from a plain reading of Sections 1718 and 3797, Title 26 U.S.C.A. Int.Rev.Code. Under the authorities relied upon it is clear that the county did not depart from its governmental functions in establishing a county agricultural fair for the purposes set forth. The statutes here in question are highly penal in their nature, and the rule is that they should be strictly construed in favor of the taxpayer. From a consideration of the facts as above stated the Court is unable to find that Cascade County's failure to collect a tax of twenty-five cents on a strip ticket was in any proper sense willful. The first official information received was that the tax was ten cents, and the second was that the tax should be twenty-five cents. Thus it appears that entirely different instructions were given as to the proper tax to be collected. The opinion of counsel, and the fair auditor, and advice of expert accountants familiar with tax questions were sought, with the result that the proper tax was found to be ten cents. This advice conformed to the first official information given. It was not an arbitrary or willful act on the part of the representatives of the county. In view of the multiplicity of taxing laws and regulations, with frequent amendments and changes, difficulty in interpretation is bound to occur, and, as appears in this case, even the tax officials themselves are sometimes in doubt.

The Court has considered the law, including authorities cited by counsel, in connection with the facts, and is now of the opinion that the decision here should be in favor of plaintiff and for a judgment of $2,016.56, with interest and costs, and such is the order herein. Other findings and conclusions may be submitted by counsel under the rule.